## WILLIAMSON *vs.* THE STATE.

1. An indictment, under the statute of 1848 (Acts 32, § 98,) for keeping an establishment for the sale of confectionary, &c. without license, is not demurrable, because it was not prefered at the instance of an informer.

2. A witness, sworn in support of an indictment founded on a statute, which, in case of conviction, gives one half the penalty to the informer, is not to be considered the informer, from the mere fact that he is the only witness in the case.

3. On the trial of an indictment for keeping an establishment for the sale of confectionary, &c. without license, evidence that the title to the premises, on which the business is carried on, is in a trustee for the use of the defendant's wife, is wholly irrelevant and properly excluded.

4. If a married woman commits a misdemeanor with the concurrence of her husband, the husband is liable to indictment.

Error to the Criminal Court of Mobile. Tried before the Hon. John E. Jones, Judge.

THE facts of this case appear fully in the opinion of the Court.

RAPIER, for the plaintiff in error :

1. The indictment was defective, and the demurrer to it should have been sustained. The statute contemplates that there must be an informer, and that his name must appear as such in connection with the indictment. The language of the statute excludes the idea of an indictment to be found in the ordinary way. So does it exclude a proceeding by information in the technical sense of the term. See pamph. Acts, 1848, p. 32, § 98. An indictment may be defined to be an accusation at the suit of the State, by the oaths of the grand jurors returned to inquire of all offences in general in the county. 2 Hawk. 287. An information, in ordinary legal acceptation, is an accusation not found by the oaths of the grand jurors, but is the allegation of the officer who exhibits it. 2 Hawk. 357, § 4. It is laid down in the old books, that where a statute makes a new offence, which was no way prohibited by the common law, and appoints a particular manner of proceeding against the offender, as by commitment, information, &c., with-

out mentioning an indictment, an indictment will not lie, because the statute impliedly excludes that mode of proceeding, &c. 2 Hawk. 289, 290; see also 2 Hawk. 370, § 20. In view of these principles, the proper construction of the statute is that the accusation must be by the oaths of the grand jurors: but that they are not to make inquiry about such offences as the statute has reference to, unless some one voluntarily comes before them as an informer. And it follows that the indictment must have the name of some one as informer appearing in the body of it, or by endorsement. How can it appear to the court that there is an informer, or how can the informer recover his portion of the penalty, unless he appears in such character in connection with the indictment?

2. If the witness, Williams, on whose testimony the indictment was founded, might be regarded as the informer, then he was an incompetent witness. 2 Stark. Ev. 775.

3. It was error to exclude the trust deed made to Brooks for the benefit of the defendant's wife. This was evidence tending to show that the wife, who was the real offending party, was acting without the coercion of her husband, and not for him, and that it was not he who was keeping the shop.

4. The charge of the court was erroneous. The law visits upon the husband the consequences of the wife's offending, when the latter acts or is presumed to act under the coercion of the former. In inferior misdemeanors, the wife is responsible for her own acts, especially if she is the chief actor, and there is no coercion of the husband. See 1 Russ. on Crimes, 20, 21; 1 Hawk. 5, §§ 12, 13; 2 Strange's Rep. 1120, Rose v. Crofts.

5. The judgment was not warranted by the law and the facts of the case. There is no judgment of conviction, but only of forfeiture. 2 Hawk. 389, § 76. Secondly, the judgment in favor of the State is for the whole penalty, whereas it should be but for a moiety. 2 Hawk. 389, § 76.

BALDWIN, Attorney General, for the State:

1. The witness, Seaborn Williams, was properly admitted to testify. He was no informer, and could have no interest in the case. The fact that the grand jury called him before them cannot make him an informer, for no one can be made an in-

former against his will, but he may be made a witness against his will.

2. The deed of trust was foreign to the case, and properly excluded by the court.

3. The most important point in the case was the charge of the court, which was *"that if a married woman kept a shop with the privity and consent of the husband, it made him liable for the consequences"* of keeping the same. In certain cases, a wife is supposed to act under the coercion of her husband, whenever she commits a crime in his presence. 1 Russ. 19, top page; Roscoe, 784; Arch. 16. If she commit a crime in the absence of her husband, though by his command, she is answerable for it; but even then, if the offence be committed by concur-rence of the husband, and he be a privy to it, he may be in-dicted. 1 Russ. 21. For all misdemeanors by the wife, the husband and wife may be jointly indicted. Rex v. Ingram, 1 Salk. 384; 4 Bl. Com. by Ryland, 29, n. 10 and 12. In New York, the husband is answerable for a forfeiture on account of his wife retailing without license in his absence. Hasbrouk v. Weaver, 10 Johns. 246.

The judgment of the court was right. It was the province of the jury to ascertain the guilt of the plaintiff in error, and the law fixed the punishment.

CHILTON, J.—The indictment charges the defendant with keeping an establishment in the county of Mobile, on the first day of June 1848, for the sale of confectionary, cakes, candies and fruits, without first procuring a license so to do according to law. The defendant was found guilty, and the court en-tered judgment that he be fined thirty dollars, that being three times the amount of the price of license required to be paid by persons engaged in that business.

Upon the trial, the defendant demurred to the indictment, because it did not disclose that there was an informer, insist-ing that as the statute gave one half of the penalty to the State, and the other to the informer, it must appear who the informer is. Acts of 1848, p. 32, § 98.

The defendant also objected, upon the trial, to the examina-tion of Seaborn Williams, who was marked upon the bill of indictment as a witness, and who was the only witness ex-

Williamson v. The State.

amined by the grand jury. This witness stated that he was not the informer, and was allowed to testify by the court. The defendant also offered in evidence a deed, dated in 1846, conveying the premises on which the establishment was located to one Brooks, in trust for the defendant's wife, and proposed showing that she kept a similar establishment on the place from 1836 down to the present period, when the indictment was found, and managed it principally herself, the defendant having another occupation calling him from home in the day time, and only being occasionally at the shop, and that the wife was always there, in the absence of her said husband, managing the shop. The court excluded the conveyance, and instructed the jury that the fact that the married woman kept a shop with the privity and consent of the husband made him liable for the consequences of keeping the same. The defendant also objected that the State was not entitled to judgment for treble the price of license, since the statute gave one moiety thereof to the informer, which objection was overruled, and judgment entered for the entire sum. The several points having been refered by the Judge of the Criminal Court to this Court, as novel and difficult, we proceed to notice them in their order.

1. The clause of the statute under which the indictment was found, being a portion of the act to provide for the assessment and collection of taxes, declares that each and every person engaged in or about, or intending to engage in any of the following kinds of business or employments, within the limits of this State, shall, before he attempts to engage in or transact any such kind of business or employment, procure from the clerk of the County Court of the county in which he intends to do such business or follow such employment, a license for the same, which shall be operative one year from the date thereof: And in default of procuring such license, the person or persons doing such business or following such employment shall be liable to pay treble the sum required to be paid for such license, *to be recovered by indictment on three days' previous notice, by motion of the solicitor for the circuit in which the county is situated, before the Circuit Court of the county in which the business or employment is alleged to have been followed—one half to the use of the informer, and the other half to the use of the*

*State.* The statute then provides that the license for keeping a confectionary or establishment for sale of confectionary, cakes, candies or fruits, shall be granted for ten dollars.

The statute, so far as it relates to the remedy, is somewhat unique and difficult of comprehension. It requires that the penalty shall be recovered by *indictment*, upon three days' previous notice, *by motion of the solicitor* before the Circuit Court, &c., one half to the use of the *informer*, the other half to the State. It is insisted, that the statute contemplates an informer, and that his name must appear as such in connection with the indictment. We do not agree with the counsel, that the indictment was demurrable, because no informer's name appears upon it. A just construction of the act would not allow the right of the State to punish those who seek to avoid her revenue laws, and to recover from them the penalty imposed, and which is a compensation for the loss of revenue consequent upon the failure of the defendant to obtain license, to depend upon the fact whether any one would become an informer in the sense contended for. Were such the law, a large portion of the public revenue might go uncollected, as it rarely happens that the small sum allowed to informers is sufficient to stimulate them to set on foot such prosecutions. The State receives the penalty, to-wit, treble the price of the license, one half to the use of the informer, if there be one, and if no informer claims the moiety, the State may retain the whole. Regarding the prosecution as a means of recovering the penalty, we see no reason why the doctrine applicable to *qui tam* actions should not apply, in respect to which Judge Blackstone says: If the king commence the action, he shall have the whole forfeiture. 2 Bla. Com. 162—citing 2 Haw. Pl. Cr. 368. The defendant cannot complain that the State, instead of the informer, takes the other moiety. It is the same to him, as the penalty is not thereby incurred, and he is deprived of no right which he could assert, were the name of an informer endorsed upon the indictment. The demurrer was therefore properly overruled.

2. The witness, Williams, cannot be regarded as the informer, merely because he was sworn as a witness. He swears that he was not the informer, and was therefore properly allowed to testify, as he was entitled to no portion of the

recovery, and consequently had no interest in the prosecution.

3. It is shown that the husband and wife lived together on the premises where the establishment was carried on. It was a question wholly foreign from the matter in issue, whether the premises belonged to the husband, the wife, or a third person. The question in issue was, whether the defendant carried on the business of selling confectionary, cakes, candies, fruit, &c., without obtaining license; if he did, it was wholly unimportant whether it was upon his own or his wife's land. So that we cannot conceive how he could have been prejudiced by the exclusion of the deed of conveyance, showing that the title to the premises, on which the establishment was situated, was in one Brooks in trust for the benefit of Mrs. Williamson.

4. There is no error in the charge of the court, that if the wife carried on the establishment with the privity and consent of the husband, he was responsible for the consequences. If she was acting with his privity and consent, she was acting for him, as much as if he had employed any one else to superintend the sales, and he was entitled, by virtue of his marital relation, to her earnings; he was also, as the proof informs us, at the shop occasionally, and although otherwise employed during the day, returned home at night. Under such circumstances, we think no case can be found which holds that the husband is not liable. Croft's case, in Strange 1120, decides that the wife may be convicted of selling gin against the injunction of the 9th Geo. 2, c. 23; but she acted without the company or coercion of her husband, and was alone the offender. There can be no doubt of the husband's liability, when the wife acts with his concurrence. 1 Russell, 17, *et seq.*; 10 Johns. Rep. 246.

There is no error in the judgment, and it is consequently affirmed.