## MOLETT vs. THE STATE.

[INDICTMENT FOR FAILURE TO KEEP WHITE PERSON ON PLANTATION.]

1. *Sufficiency of indictment in statement of time.*—Under the provisions of the Code, (§ 3512,) an averment of time is not necessary in an indictment, except where time is a material ingredient of the offense : if the offense is charged to have been committed before the finding of the indictment, but after a specified day which is beyond the period prescribed as the limitation of a prosecution, it is nevertheless sufficient on demurrer.

2. *Limitation of prosecution for misdemeanor.*—When a prosecution for a misdemeanor is commenced by indictment, the indictment must be found (Code, § 3374) within twelve months after the commission of the offense ; but, when the defendant is bound over to answer an indictment to be preferred against him, the commencement of the prosecution dates from that time, and not from the time when the indictment is found.

3. *Informer unnecessary.*—A demurrer does not lie to an indictment, because it does not appear to have been preferred at the instance of an informer.

4. *What constitutes offense of keeping slaves on plantation without presence of white person.*—If a person keeps his slaves on a plantation separate from that on which he resides, and four miles distant from it, without the presence of a white person as agent or overseer, he is guilty of the offense denounced by the act of 1856, (Session Acts 1855-6, p. 18,) although he owns all the land intervening between the two places.

Molett v. The State.

5. *Constitutionality of statute creating that offense.*—The act of 1856, "the more effectually to secure subordination among slaves, by requiring the owner or overseer to reside with them," (Session Acts 1855–6, p. 18,) is not violative of any constitutional provision.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. WILLIAM M. BROOKS.

THE indictment in this case was found at the November term of said court, 1857, and was in these words:

"The grand jury of said county charge, that before the finding of the indictment, and after the first day of March, 1856, William P. Molett, being then and there the owner of certain slaves, did suffer and permit more than six hands, the property of said William P. Molett, to reside on a plantation belonging to him, known as the 'Mill place,' in the county and State aforesaid, for three months consecutively; and that neither he, the said Wm. P. Molett, nor any overseer or white agent, remained on the same place with said hands, or within the distance of one mile thereof; against the peace and dignity of the State of Alabama."

The defendant moved the court to quash the indictment, "because it did not appear on the indictment that there was an informer in the case;" and reserved an exception to the overruling of the motion. A demurrer was also interposed to the indictment, and overruled; but the record does not show what causes of demurrer, if any, were specified. It appeared that another indictment, found at the preceding May term of the court, had been quashed on demurrer, at the term at which this indictment was found; and that the defendant had then been required to find bail for his appearance to answer a new indictment.

On the trial, as appears from the bill of exceptions, the State introduced witnesses who testified, in substance, that between the 1st March and the 1st June, 1856, they were frequently on the plantation mentioned in the indictment; that they there saw ten or fifteen slaves, belonging to the defendant, who worked and lived on the place; and that no white person resided on the place, or, so far

27

as they saw, superintended the slaves. "The defendant then proved, that the place mentioned in the indictment was part of a continuous body of land belonging to him, and on which he resided; that he had several negro-quarters, and five different plantations, located on said lands at convenient distances from each other, and some of them within a mile of his residence; that he acted as overseer of his own slaves, and was a vigilant overseer; that he was frequently on the place mentioned in the indictment, superintending his negroes in the day-time, and, at night, returning to his residence four miles distant; that he had no overseer or other white agent at any of his said negro-quarters and plantations, except as above stated; that he was, during the years 1856 and 1857, at no time absent from home, or from his several plantations, so much as a week at a time. It was proved, however, that when he went to or visited his said plantations, he remained on each but a short time during the day, and not at all at night." All the evidence is set out in the bill of exceptions, but a more particular statement of it is deemed unnecessary.

"On this evidence, the court charged the jury,—

"1. That if they believed the evidence, the defendant did not, within the meaning of the law, remain on the plantation, or within a mile thereof, during any three months consecutively, from March, 1856, to November, 1857.

"2. That if they believed from the evidence that the defendant suffered more than six of his slaves to reside on the plantation mentioned in the indictment, for three consecutive months, during the period of eighteen months next preceding the finding of the indictment in this case; and that neither the defendant, nor any overseer or white agent, remained on said place, or within one mile thereof, at any time during three consecutive months, they should find the defendant guilty, if said place and said slaves belonged to him."

To each of these charges the defendant excepted, and requested the court to instruct the jury as follows:

"That if they believed from the evidence that the land

on which the defendant resided in 1856 and 1857 was the same continuous body of lands on which the plantation described in the indictment was situated; and that all of said lands belonged to the defendant; and that the defendant vigilantly overseered his slaves, and superintended them as owner, while they were at work on the place, without being absent from them, or ceasing to attend to them in person, for three months consecutively during those years,—then the defendant is not guilty, although the jury may believe from the evidence that he did not remain at the same place or plantation where the negroes resided, or within one mile thereof, during any three months consecutively during those years."

The court refused to give this charge, and the defendant excepted to its refusal.

The overruling of the demurrer to the indictment, and of the motion to quash it, the charges given by the court, and the refusal of the charge asked, are the matters presented for revision in this court.

GEO. W. GAYLE, with BYRD & MORGAN, for the prisoner.

M. A. BALDWIN, Attorney-General, contra.

A. J. WALKER, C. J.—The indictment, found on the 17th November, 1857, alleges the offense to have been committed before the finding of the indictment and after the first day of March, 1856. The offense may have been committed after the first day of March, 1856, and not within twelve months before the finding of the indictment. The indictment fails, therefore, to show the commission of the misdemeanor within the period prescribed by the statute of limitations. Before the Code, this would have been a fatal objection; but it is not now necessary to make any averment that the indictable act was done within the time mentioned in the statute of limitations. No specification of the time is necessary, unless time is a material ingredient of the offense.—Code, § 3512; and Form No. 1, page 698.

The forms prescribed by the Code make sufficient an allegation, that the offense was committed before the

finding of the indictment. It cannot vitiate, that the indictment, instead of embracing within its allegation all past time, limits to a certain specified day in the past the period within which the offense was committed.

[2.] One year is the period of limitation for a misdemeanor.—Code, § 3374. Although it was not necessary to aver in the indictment, that the offense was committed within twelve months before commencement of prosecution, yet it was necessary to prove it. One of the charges authorized a conviction, if the offense was committed within eighteen months before the finding of the indictment. That charge was wrong, and on account of it there must be a reversal. The indictment in this case appears from the record to have been the commencement of the prosecution. The charge was probably given upon the supposition, that the defendant had been bound over six months before the indictment was found. If that had been the case, the period of limitation would have been computed from the time when the defendant was bound over. Code, § 3376. But there does not appear to have been any proceeding against the defendant before the indictment.

[3.] That it was not necessary that there should have been an informer is decided in Williamson v. The State, 16 Ala. 431.

[4.] The negroes were on a plantation different from that on which the defendant resided, separated and distinguished from it, and four miles distant; but the intervening territory between the two plantations belonged to the defendant. This last circumstance does not make the plantation where the slaves remained less a distinct and different place from that on which the defendant resided. The fact that the intervening land belonged to the defendant, neither takes the case out of the letter of the statute, nor tends to avoid the evils which the statute aims to prevent.

[5.] We have no doubt as to the constitutional power of the legislature to pass the law in question. The law may be classed with those police regulations for the prevention of crime, the preservation of peace and good

order, and the security of life and property, the power of enacting which has always been conceded to the State legislature in the absence of some constitutional prohibition.

The judgment of the court below is reversed, and the cause remanded.