# Henback *v.* The State.

### *Indictment for carrying on Business without License.*

1. *When penal law goes into effect.*—The provision of the Revised Code, that no penal act shall go into effect until thirty days after the adjournment of the legislature at which such act may be passed, is a mere legislative enactment, repealable at the pleasure of the General Assembly. If the time when a penal enactment shall go into effect is fixed in the statute, that operates a repeal of the prior statute, so far it affects the particular law.

2. *Mobile; right given to regulate public market; effect of.*—A grant of power by the State, to the municipal authorities of Mobile, "to establish and regulate markets, and to prohibit the selling of meats except at public markets" in that city, does not deprive the State of the right to require a license from persons, who carry on the business of butchers, under license from the municipal authorities.

3. *Butcher; what does not constitute, within the meaning of the revenue law.*—The business of a butcher may include in it the cutting up and selling by retail the carcasses of animals slaughtered by him; but proof that a person buys the bodies of animals slaughtered for meat, and cuts them up and retails them, at a market stall,—is not, of itself, sufficient to constitute him a "butcher," within the meaning of section 101 of the revenue law, which requires persons engaged in that business to take out a license.

4. *Indictment; when sufficient.*—An indictment, following the analogous forms in the Code, for a violation of section 101 of the revenue law of 1875, which charges that the offense was committed "before the finding of the indictment, and after the first Monday in April, 1875, and without license, and contrary to law," is not bad on demurrer, although the legislature subsequently extended the time for taking out licenses until the 15th of April, 1875, and relieved parties who complied with the law by that time from all penalties theretofore incurred.

APPEAL from Mobile City Court.
Tried before Hon. O. J. SEMMES.
The opinion states the facts.

JOHN ELLIOTT and J. LITTLE SMITH, for appellant.—The indictment was fatally defective, and the demurrer to it should have been sustained. It was too uncertain to authorize a judgment of conviction. It confounded things not

[Henback *v.* The State.]

forbidden, with those made penal by law. An indictment must conform to the description of the ingredients which the statute describes as constituting the offense. *Hirshfelder* v. *The State*, 18 Ala. 115 ; *Eubanks* v. *The State*, 17 Ala. 183. This is not like cases arising under statutes which do not specify any particular time," from and after which an act becomes penal, if done without a license. The charter of Mobile vests the sole right to allow the sale of meat within the city limits, in the city authorities ; and until this grant is revoked, the State has no right to dispose of any permission to its citizens to sell meat within the city limits. The charge of the court was clearly erroneous, as it authorized a conviction on evidence which fell far short of proving that the defendant was a "butcher."

JOHN W. A. SANFORD, Att'y Gen., *contra.*

MANNING, J.—The charge against defendant is, that "before the finding of this indictment, and after the first Monday in April in the year 1875, Frederick Henback was engaged in, or carried on, the business of a butcher, in a stall numbered 37, in the southern market in the city of Mobile, without a license, and contrary to law; against the peace and dignity of the State of Alabama." A second count charges, in like terms, that he " did engage in the business of a butcher," &c.; and a third count, in like terms, charges that he " did carry on the business of a butcher," &c.

This indictment was found under section 101 of the revenue act of March 19th, 1875; which enacts, "That any person who, after the first Monday in April, 1875, and after the first Monday in March of each succeeding year, shall be engaged in, or carry on, any business or profession, or do any act, for the doing, prosecuting, or carrying on of which a license is by law required to be taken out, without having paid for and taken out such license, shall be deemed guilty of a misdemeanor, and shall be fined three times the amount of such license," &c. By another statute of the same date (Acts of 1874–5, p. 48), " the. time for taking out licenses for the current year . . . . . is extended ; . . . . . and any person, taking out a license by the 15th day of April next, shall be relieved from all penalties that may have accrued on account of the failure to take out a license as required by law," And sections 3544 and 3955 of the Revised Code provide, that no penal act shall go into effect until thirty days after the adjournment of the legislature at which such act may be passed. The legislature which passed the stat-

[Henback *v.* The State.]

utes above quoted from, adjourned on the 23rd day of March, 1875.

Appellant insisted, by demurrer in the court below, that the indictment was bad—1st, because it charged that the offense was committed before the time when the statute creating it went into effect; and, 2dly, because by the charter to the city of Mobile the State had conceded to it the power "to establish and regulate markets, . . . . . and to prohibit the selling of meats . . . . . except at the public market or markets" in that city.

In regard to the first ground of demurrer : The provisions in the Revised Code are mere enactments of the legislature. Nothing hinders that body from abrogating entirely the sections cited ; and if in a new enactment, the General Assembly prescribes a different time when it shall go into effect, from the period of thirty days after the adjournment of the legislature which adopted it, this operates to exempt such new enactment from those provisions in the Code. These, in such a case, have no effect on it.

The supplemental act above referred to relieves those from the penalties of not having taken out licenses when required to do so, who should take them out by the 15th of April then next ensuing. As the appellant had not done this, he was not brought within the provisions of this act.

But if he had been, or if the act had not, according to the provisions of the Code, gone into effect until the thirty days expired on the 23rd of April, 1875, the first ground above mentioned of demurrer could not be sustained.

According to the Revised Code, and the form of indictment it prescribes, the only averment required, of the time when the offense charged was committed, is, that it was "before the finding of this indictment " (§ 4115, and page 808); and, as this court decided in *Molette* v. *The State,* 33 Ala. 408, "it cannot vitiate, that the indictment, instead of embracing within its allegation all past time, limits to a certain specified day in the past the period within which the offense was committed." This day, in the case quoted from, reached backward to a period when the statute of limitations would bar the prosecution ; yet this was held of no consequence. In the cause before us, it is charged the offense was committed "contrary to law ;" and the evidence must show that the act charged as an offense was done at a time when there was a law prohibiting it, as well as within the period when the statute of limitations would not bar.

In respect to the second ground of demurrer, it is sufficient to say, that the grant by the State of authority to the

[Henback *v.* The State.]

city government of Mobile to exact a license from, or to exercise control over venders of meats within its limits, does not exclude the General Assembly of the State from any of its jurisdiction in the premises.

The only evidence that appellant carried on the business of a butcher, was, that he cut up and sold meat by retail at stall 37 in the southern market in Mobile; that he so cut up whole carcasses of sheep, and quarters of beef, and retailed them in pieces. Where or by whom the animals had been or were slaughtered, was not shown by the evidence. The bill of exceptions sets forth expressly, that "no other evidence was introduced, tending to show that the defendant was engaged in, or carried on, the butchering business, or business of a butcher." Upon the evidence mentioned, and that the acts complained of were done after the 23rd of April, 1875, and before the finding of the indictment, the judge, in his charge to the jury, said: "And the court tells you, that if you believe from the evidence that the defendant . . . . . engaged in, and carried on, the business of cutting up whole sheep, although killed and skinned, and quarters of beef, for sale, and sold the same after being cut up, and that this was his principal business, then he was engaged in the business of a butcher." For aught that appears in the bill of exceptions, the animals that furnished this meat may have been killed elsewhere, and by other persons, from whom the appellant purchased the meat after they had been killed. It may have been sent down from the country in carcasses and quarters. We all know it is common for this to be done—for meat in such form to be sent from the interior to the produce sellers of our large towns and cities. From this class of merchants, defendant may have bought the meat he cut up and sold. If he did, this would not constitute him a butcher, or a person engaged in the business of a butcher. A butcher might, or might not, cut up and sell by retail in the market, the bodies of the animals he had slaughtered. It is a common thing, no doubt, for him to do so; and hence it may seem to be, and indeed would be, a part of the business of a butcher. But we have to disregard the true meaning and origin of the word, as explained in dictionaries, if we hold that he who buys the bodies of animals that have been slaughtered for meat, and cuts them up, and retails them, without more, becomes thereby a butcher, or engaged in the business of a butcher.

The court erred in the instruction it gave, above recited; and for this error, the judgment must be reversed, and the cause remanded.