101  433
·108  549

## Strouse v. Leipf.

*Action against a Married Woman to recover Damages for Injury by a Dog owned by Her.*

1. *Pleas in bar and abatement; can not be pleaded together.*—Matters in abatement of a suit and facts constituting a bar to the action can not be pleaded together.

2. *Pleading; error without injury.*—Where a defendant, under a plea of the general issue, is entitled to make the same defense that could have been made under a special plea to which a demurrer was sustained, and on the trial evidence was introduced before the jury, and the identical question sought to be presented by the special plea was considered, error in sustaining the demurrer is error without injury.

3. *Duty of owner or keeper of ferocious animal; liability for injury inflicted by it.*—The owner or keeper of a vicious and ferocious domestic animal, having knowledge of its vicious and ferocious nature and habits, must safely and securely keep such animal, and his failure to do so imposes liability for injury inflicted thereby.

4. *Husband and wife; statute securing wife's separate estate.*—Under the common law, so long as the marital relation is maintained, the husband is the head of the family, determines where the home shall be, controls all things belonging to the household and premises, and directs the economy and administration of domestic affairs; and our statutes, securing to the married woman her separate estate, (Code, §§ 2341–2356), have wrought no change in these relative rights and duties.

5. *Same; effect of section 2345.*—The statute that declares that the husband is not liable for a tort of the wife, in the commission of which he did not participate, (Code, § 2345), provides a new remedy for an actionable tort committed by the wife, and requires that action therefor should be brought against the wife, but does not declare an enlarged liability on the part of the wife for torts.

6. *Same; action against wife for injuries caused by a dog owned by*

28

[Strouse v. Leipf.]

*her.*—Where a dog, which is owned by a married woman, and known to be ferocious and vicious, is kept on the premises owned by her, where she and her husband reside, and escaping therefrom inflicts injuries, the wrongful act is the keeping of the dog, and the husband, being the head of the family and having control of the premises, is liable for such injuries, and no action therefor can be maintained against the wife. (McClellan, J. dissenting.)

Appeal from the Circuit Court of Mobile.

Tried before the Hon. James T. Jones.

This action was brought by the appellee, Elizabeth Leipf against the appellant Estra Strouse, a married woman, to recover damages for defendant's negligently keeping a savage and ferocious dog, so that it escaped from the premises and inflicted the injuries complained of. The defendant pleaded a special plea in abatement, which is sufficiently stated in the opinion. The plaintiff demurred to this plea, on the ground that the fact that defendant's husband "controlled the dog kept by defendant, and controlled the premises upon which it was kept, does not relieve the defendant from liability for keeping said dog, and the injuries arising therefrom." The court sustained this demurrer, to which ruling the defendant duly excepted. The defendant then pleaded the general issue, and by special plea that the defendant teased and irritated the dog, and thus brought the injury on herself. Issue was joined upon these pleas.

Plaintiff was a servant living next door to defendant in the city of Mobile, a fence only dividing the premises where the dog was kept on the premises where defendant lived, she being a married woman, wife of Simon Strouse. In the rear of both premises, running through the square, was a common alley-way, used by all the families occupying premises abutting on the alley-way, to bring in wood, coal, family supplies, &c. There was a gate from the rear yard of defendant's premises opening into this alley-way. In this yard a watch dog was kept. On the evening of 21st of February, 1891, the plaintiff was in the alley-way emptying trash, and at the same time talking in a loud voice to a servant in a yard on the opposite side of the alley-way. The dog, hearing her voice, rushed out of the alley-way gate and attacked her, and she was severely bitten before she was relieved by the intervention of other persons. The defendant and her husband were not at home at the time, and the

[Strouse v. Leipf.]

gate was left open by a visiting servant, who came to see the cook on the premises of defendant. The other facts of the case are sufficiently stated in the opinion.

Among the charges asked, to the refusal to give each of which the defendant separately excepted, were the following: (6.) "Defendant asks the court to charge the jury, that if they believe from the evidence that the defendant Estra Strouse and Simon Strouse are husband and wife, and resided together as such husband and wife, at the time plaintiff was injured by the dog, and that the dog was kept on the premises where they resided, then the husband was the keeper of the dog and they must find for the defendant." (7.) "Defendant asks the court to charge the jury, that if they believe from the evidence that defendant was at the time of plaintiff's injury a married woman, residing with her husband, Simon Strouse, on the premises where the dog was kept, then in law the husband was the keeper of the dog, and they must find for defendant."

There was judgment for the plaintiff, assessing her damages at $2,500. The defendant appeals, and assigns as error the sustaining of plaintiff's demurrer to her plea in abatement, and the refusal to give the several charges asked by her.

OVERALL, BESTOR & GRAY, for appellant.—The evidence shows that the defendant was not the keeper of the dog, and, therefore, was not liable.—Whittemore v. Thomas, 153 Mass. 347. There is no evidence showing neglect or want of care by appellant or any servant or other person connected with the household in the keeping of the dog. At the time of the biting and injury to the appellee sued for, defendant was a married woman, and if there was any wrongful act in the keeping of the dog, the husband was the party liable, and not the wife. Code, § 2345; Bibb v. State, 94 Ala. 31, 10 So. Rep. 506; Williamson v. State, 16 Ala. 431; Donge v. Pearce, 13 Ala. 128; Seibert v. State, 40 Ala. 60; Mulvey v. State, 43 Ala. 318; Lawson's Admr. v. Lay's Extr'., 24 Ala. 184; Quinlan v. People, 6 Parker Cr. Rep. 9.

The defendant should have knowledge of the vicious propensity of the dog.—Smith v. Causey, 22 Ala. 571; Durden v. Barnett, 7 Ala. 169; Woolf v. Chalker, 81 Amer. Dec. 175; Cooley on Torts, pp. 342-4-5.

GREGORY L. & H. T. SMITH, *contra.*—When a dog is shown to be of. a ferocious character, and when it is shown that the character of the dog was notorious, the law charges the owner with notice, and requires her to keep the animal at her peril, and the keeping of such a dog in a manner which makes it possible for it to escape and injure others, creates a liability upon the owner, as well as upon the actual custodian.—*Garlick v. Dorsey,* 48 Ala. 222 ; Shearman & Redfield on Negligence, 648, § 628 and note, also § 629 note 8, also 630, 631 ; Whittaker's Smith on Negligence, pp. 99, 100 and notes.

STONE, C. J.—This suit was brought by appellee to recover damages for alleged injuries suffered from the bite of a dog. The suit is against Estra Strouse, and the complaint charges that "the defendant kept, and for a long time prior thereto had kept, a dog of savage and ferocious nature, and on, to-wit,the 21st day of February 1891, the defendant so negligently kept said dog that it escaped from the premises and attacked the plaintiff, and bit and tore and lacerated her, to her damage in the sum of  *  *  *. The plaintiff avers that the defendant had notice of the savage and ferocious nature of said dog, prior to the matters hereinbefore complained." The complaint then claims special damages for being thereby disabled to perform customary work, for expense of medical treatment, and for necessary nursing. There is a claim of a specified sum as damages, sufficiently large to cover the recovery.

The defendant interposed a plea, sworn to, which is styled a plea in abatement. This plea was demurred to, the demurrer sustained, and this ruling is the subject of one of the errors assigned. The plea avers that when the act was done which gave rise to the suit "she was a married woman, the wife of Simon Strouse, who is now living in the city and county of Mobile, State of Alabama, that she was not at said time separated, or living apart from her said husband, but they were living together in conjugal and marital relations." This clause of the plea does not negative the idea that the act complained of was solely the act of the wife. At common law this would have been a good ground of abatement. Under that system a suit could not have been maintained against the wife alone, on the facts charged in the complaint in this

. case. It would have been necessary to sue the husband jointly with the wife.—*Pinkston v. Greene*, 9 Ala. 19.

Our statute has changed the common law on this subject. Section 2345 of the Code declares that the husband is not liable for the torts of the wife, "in the commission of which he does not participate; but the wife is liable * * for her torts, and is suable therefor as if she were sole." This has changed the entire law as to the manner of suing a married woman, and has rendered it improper to join the husband, when the charge is that the wife herself committed the tort.—14 Amer. and Eng. Encyc. of Law, 647, and note 1 on pp. 648-9. The effect of our statute has been to render, in large degree if not entirely, the matter set up in the first part of this plea non-availing as a defense in abatement. Its whole scope, if available in any conditions, would seem to be confined to its effect as a bar to the action.

This plea has another averment, namely, "that the said husband was at said time, prior thereto and ever since, the head of the family and the household, and had control of the said dog and of the premises where the said dog was kept, and where said occurrence is said to have taken place." This averment is, in no sense, matter in abatement. If true, it is equivalent to the general issue, is a denial that the defendant kept the dog, and is a perfect bar to the action, if made good. Pleas in abatement and pleas in bar can not be pleaded together; and it may be that the latter averment would be construed as a waiver of the matter relied on in abatement. But we need not decide this. Defendant interposed the plea of the general issue, and under that plea was not only entitled to make all defense she could have made under the plea to which the demurrer was sustained, but she actually introduced proof, and had the jury pass on the identical question she had sought to present by the special plea. This, under all the authorities, cured the error, if any had been committed, in sustaining the demurrer to the latter clause of the special plea.

The doctrine is well settled that the owner or keeper of a domestic animal which is vicious and prone or accustomed to do violence, having knowledge of such violent disposition or habit, must safely and securely keep such animal so that it can not inflict injury. Whether or not there was special negligence in permitting the dog's es-

cape from the premises, is not the inquiry. The keeper must at his peril safely keep such animal. Such is the condition on which the ownership or custody of known vicious animals is tolerated. Ownership or custody of such vicious animal is not one of the natural, inherent rights of property. It is a qualified, or restricted right. Qualified by the condition that the animal can be and is safely confined and kept.—Cooley on Torts, 343 *et seq*. 1 Addison on Torts, § 261; Whittaker's Smith on Neg., 99; 2 Shearman & Redf. on Neg., §§ 628, 631; The Lord Derby, 17 Fed. Rep. 265; 1 Amer. & Eng. Encyc. of Law, 581; *Garlick v. Dorsey*, 48 Ala. 222; *Nolan v. Traber*, 49 Md. 460.

Previous knowledge of the animal's vicious habits must be alleged and proved; but positive proof is not always necessary. It may be inferred from circumstances. But the knowledge of the vicious habits of an animal need not refer to circumstances of exactly the same kind. All that the law requires to make the owner or keeper liable is knowledge of facts from which he can infer that the animal is likely to commit an act of the kind complained of.—1 Amer. & Eng. Encyc. of Law, 582 and note.

The pivotal question in this case is, whether Mrs. Strouse, the wife of Simon Strouse, living in the same house and in marital relations with him, can, under the facts of this case, be adjudged guilty of the tort complained of. Let us first ascertain precisely what was done which led to the plaintiff's alleged injury, or sheds light on the circumstances attending it. We premise that what is here stated is proved by all the testimony bearing on the question or questions, without a shade or semblance of conflict. The house and premises in which Mr. and Mrs. Strouse lived together as husband and wife was the property of Mrs. Estra Strouse, the defendant in this suit. They lived there as husband and wife, having their children around them, and had lived at the same place for many years. A dog had for years been on the premises, not otherwise confined than by the inclosure of the lot. In the day time, when neither Mrs. Strouse nor her husband was at home, the dog escaped through the back gate of the lot, and inflicted the injury complained of in an open, public alley-way which extended across from street to street at the rear of the

premises. No special act of negligence—in fact, no direct agency—is charged either againt Simon or Estra Strouse, in immediate connection with the escape of the dog at the time it took place. The immediate cause, according to the testimony, was the act of a visiting stranger. But, as we have shown above, negligence in permitting the dog to escape from the inclosure was not essential to the maintenance of this action, The fault and liability for the injury which ensues are established, according to legal requirements, when it is shown that a vicious animal, prone, and known to be prone, to inflict personal injuries, is kept, and such animal escapes from confinement and inflicts injury. This constitutes an actionable tort, perpetrated by the keeper of such animal. That there was testimony tending to prove the vicious, if not dangerous nature and temper of the dog, and tending to charge his keeper with a knowledge of such his evil disposititon, can not be gainsaid. A verdict, finding such to be the fact, could not be set aside as unsupported by testimony.

The testimony as to the ownership, custody or keep of the dog was as follows : Plaintiff testified : "It was Mrs. Strouse's dog. She would go to the butcher wagon and ask for meat for the dog. She got the dog from Mr. Hayes, who is now dead. I heard Mrs. Strouse say that Mr. Hayes gave her the dog when it was a small puppy. Mr. Strouse's cook fed the dog. I do not know who took care of him." This was the entire testimony for plaintiff on this question. For defendant, Strouse and his wife testified that Hayes or Haas gave the puppy to Mr. Strouse, that he had always owned him, and gave directions as to his being fed. Their two children and the cook confirmed them in this testimony. It is not our intention to compare the relative weight of this conflicting testimony.

The authorities are uniform that the husband is the head of the family, so long as the marital relation is maintained. He determines where the home shall be, is entitled to the wife's labor and services, has the right to have her society, controls the home and the household, and, with limited exceptions, she must obey his commands. In domestic management she is not presumed to have an independent will of her own. And our statutes, securing to married women their separate estates, have

wrought no change in these relative rights and duties that affects the questions presented in this case. In *Hanberry v. Hanberry*, 29 Ala. 719, it was said : "It is settled law that the domicil of the wife follows that of the husband." In *Firebrace v. Firebrace*, Law Rep. 4 Prob. Div. 63, 67, it is said : "The domicil of the wife is that of the husband." This was said in 1878, after the enactment of the married woman's act in England. In the matter of Cochrane, 8 Dowl. Prac. Rep. 630, 635, Coleridge, J., replying to the contention "that the wife, as to her residence and manner of passing her time, was independent of her husband;" said : "But our law has not so limited his rights, nor rested them on so narrow a foundation. Although expressed in terms simple almost to rudeness, the principle on which it proceeds is broad and comprehensive. It has respect to the terms of the marriage contract, and the infirmity of the sex. For the happiness and honor of *both* parties it places the wife under the guardianship of the husband, and entitles him, for the sake of both, to protect her from the danger of unrestrained intercourse with the world, by enforcing cohabitation and a common residence." In the same opinion he quoted Lord Mansfield as saying, "The husband has, in consequence of his marriage, a right to the custody of his wife, and whoever detains her from him violates that right, and he has a right to seize her wherever he finds her."

In *Ashbaugh v. Ashbaugh*, 17 Ill. 476, the court said : "In contemplation of law the husband and wife are one person, and her residence follows that of the husband." This principle was re-affirmed in *Davis v. Davis*, 30 Ill. 180, and in *Kennedy v. Kennedy*, 87 Ill. 250. In *Elijah v. Taylor*, 37 Ill. 247—a case controlled by their statute securing to married women the ownership of their property—the court employed this language : "We desire to proceed cautiously in the construction of that act, because although passed without much consideration, it involves interests of great magnitude, and questions of no little difficulty. All that we deem it necessary to say, in regard to the case before us, is this : that where the husband, as the head of the family, occupies and cultivates the land of the wife, he must be considered as occupying it with her consent, for the common benefit of the family ; and the products of his toil upon such land, are as much

[Strouse v. Leipf.]

his property, notwithstanding the act of 1861, as if he had occupied, as a tenant, land rented from some third person. Any other rule would plainly lead to great confusion, and open a wide door to fraud."

In *Boyce v. Boyce*, 23 N. J. Eq. 337, 348, the principle is thus expressed: "The wife is bound to follow her husband when he changes his residence, even without her consent, provided the change is made by him in the *bona fide* exercise of his power, as head of the family, of determining what is the best for it."

In California the rights of the wife to the ownership and control of her property were never framed after the common law model. They partook more of the civil law system. In *Hardenbergh v. Hardenbergh*, 14 Cal. 654, is this language: "The husband, being the head of the family, and bound for its support and maintenance, may change the matrimonial domicil at pleasure, and it is the duty of the wife to submit to the reasonable exercise of this right."

The case of *Glover v. Alcott*, 11 Mich. 470, arose after the enactment of their statute securing to married women the ownership and control of their property. The wife had permitted the husband to conduct a large business, styling himself "W. W. Alcott, agent." Indebtedness was incurred in the conduct of the business, and some barrels of flour, the product of the enterprise, were seized and sold in payment thereof. The wife brought an action of trover for their conversion. In discussing the question of her right to maintain the action, the court, Christiancy, J., said: "We see nothing in the statute to satisfy us that the legislature contemplated so radical a change in the legal relations of husband and wife, while they continue to live together, and he is competent to the transaction of business, and guilty of no gross neglect of his duties to her and his family. But the husband must, as a general rule, still be regarded as the head of the family, and as the only one of the two authorized to carry on such general trade and business."

In Massachusetts, they have legislation somewhat analogous to ours, relating to the rights of married women in their separate property. In *Com. v. Wood*, 97 Mass. 225, the husband was indicted for keeping a house of ill fame. The house was the separate property of the wife. The defense relied on and ruled upon is shown in

[Strouse v. Leipf.]

the following extract from the opinion of the court:
''The defendant contends that he is not liable, because
the house was owned by his wife as her separate
property, and the business of keeping a house of ill fame
therein, which was resorted to for prostitution and lewd-
ness, was carried on by her, and she took the profits
thereof, and he did not participate in them. Whether
he is liable in such a case must depend upon the relations
which he sustains to the household, while he lived with
his wife as her husband.

"The doctrine of the common law is, that by marriage
the husband and wife become one person in law; that
she is under his protection, influence, power and author-
ity, and that he is the head of the household. This con-
dition of the wife is designated by the expressive term
*coverture*. One effect of it is, as a genernal rule, though
subject to many exceptions, to excuse her from punish-
ment for many crimes committed by her in the presence
of her husband, on the ground that she acted under his
compulsion. He alone is held responsible for such
crimes. [Citing many authorities.] How far he may
exercise force in restraining her is not precisely settled.
But there can be no doubt that he may exercise as much
power as may be reasonably necessary to prevent her as
well as other inmates of the house from making it a
brothel. It is said in Dalton's Justice, that he is liable
if she keep an ale-house without license against his will.

''But it is contended that the recent legislation of this
Commonwealth has made married women so far inde-
pendent of their husbands as to release the defendant, in
such a case as the present, from all responsibility for the
conduct of his wife. It is true, that the house they lived
in appears to have been owned by her to her sole and
separate use, free from the control of her husband. But
ever since the law of equitable trusts existed, married
women have been able to hold property thus indepen-
dently of the husband's control; and the fact that the
family lived in a house they owned has never been re-
garded as affecting the rights and power of the husband,
as head of the family. * * * * These provisions of the
statute relate to legitimate business, and not to the keep-
ing of brothels. They do not take away his power to
regulate his household, so far as to prevent his wife from
committing this offense, or relieve him from responsibility

if it is committed." See also *Com. v. Flaherty*, 140 Mass. 454.

A misdemeanor or tort committed by a married woman conjointly with, or in presence of her husband, is presumed to be his act, because the law raises the presumption that she acts in obedience to his will, or under his coercion. The same rule applies as to crimes, except a few of the higher grades.—*Douye v. Pearce*, 13 Ala. 127; *Williamson v. State*, 16 Ala. 431; *Lawson v. Lay*, 24 Ala. 184; *Mulvey v. State*, 43 Ala. 319; *Quinlan v. People*, 6 Parker Cr. Co. 9; Cooley on Torts, 115. "There is a presumption," says Judge Cooley, "corresponding to that which is made in the criminal law, that if a wrong is committed by the wife in the presence of the husband, it must have been committed by his consent and under his influence, and consequently, is his wrong rather than that of the wife, and should be redressed in a suit against him alone. But any such presumption is liable to be overthrown by evidence." See also *Carleton v. Haywood*, 49 N. H. 314.

This same learned author, Judge Cooley, p. 118, says: "It is not very clear how far the law of torts has been modified." He was speaking of the influence exerted by the statutes by which married women have been given independent power to make contracts and to control property. Continuing, he says: "We should probably be safe in saying that so far as they give validity to a married woman's contracts, they put her on the same footing with other persons, and when a failure to perform a duty under a contract is in itself a tort, it may doubtless be treated as such in a suit against a married woman. The same would probably be true of any breach of duty imposed upon a married woman as owner of property which she possesses and controls the same as if sole and unmarried."

We have referred to our statute which authorizes suits to be brought against the wife alone: Section 2345 of the Code of 1886. That section in its entirety reads as follows: "The husband is not liable for the debts or engagements of the wife, contracted or entered into after the marriage, or for her torts, in the commission of which he does not participate; but the wife is liable for such debts or engagements entered into with the consent of her husband in writing, or for her torts, and is suable therefor, as if she were sole."

[Strouse v. Leipf.]

All who are familiar with the principles of the common law will readily perceive, and take in a large field for the operation of this statute. Under that system, a wife could make no contract or agreement which, as such, would authorize an action and recovery against her. Under the statute, if she enter into a contract or agreement with the written consent of her husband, an act for its breach may be maintained against her alone. Nor could she be sued alone, under common law rules, for any tort committed by her, no matter how wrongful, violent, or independent of presumed marital restraint her conduct may have been. Under that system, if the tort was committed in the presence of her husband, *prima facie*, it was not her tort, but was presumed to have been the work of her husband's coercion. For such act, unless it was affirmatively shown that she acted independently of her husband's will, she could not be sued, even conjointly with her husband. It was his tort, and his alone, and he alone was suable for it. If she committed a tort in the absence of her husband, or, if present, if it was affirmatively shown that she acted of her own will and independently of his, then she could be sued, but the suit could only be maintained against her and her husband jointly. In this last class of cases, the statute has changed the law to this extent: It is now neither proper, nor permissible to join the husband as a defendant, in an action for a tort committed by a married woman, "in the commission of which the husband does not participate." That is, in those cases of tort by the wife in which, at common law, the husband and wife could be jointly sued, the wife, under the statute, may and must now be sued alone. There was no intention to change the domestic relations between husband and wife, or to revolutionize the economy which pertains to that domestic relation. The statute relates to remedies. It confers a remedy for the enforcement, or breach of a contract or agreement, which itself had authorized a married woman to enter into; and a new remedy for an actionable tort committed by her. For either of these she must be sued alone. There is not a word or syllable in the statute which gives intimation of an intention to declare and fasten an enlarged liability for torts. It compasses all its ends, and gives effect to its every provision, when it transfers the burden from the joint

shoulders of husband and wife, and places it on the wife alone. We repeat, so far as it relates to torts, it deals with the remedy, not the liability. We do not doubt that a married woman may commit a tort, even in the presence of her husband, for which an action may be maintained against her individually and separately. Personal violence, or any other active wrong, showing that it was prompted by her personal will, passion, wantonness, or recklessness, would fall within this class. Proof of such self-prompted action would overcome the presumption of marital restraint, or coercion.— *Carleton v. Haywood*, 49 N. H. 314.

Let us recur to the facts of this case. The dog had been on the premises for several years. No present act of negligence is charged against husband or wife which led to the escape of the dog, and consequent injury of the plaintiff. The fault charged was and is, that a dog with known vicious propensity was kept on the premises, and that escaping therefrom, he inflicted the injury complained of. The wrongful act was the keeping of the dog. This pertained to the government of the household and premises, the economy and administration of the domestic affairs. It was not the act of a moment, or the work of an hour or a day. It was continuous in its nature, and must be charged to the account of the head, the governing head of the family. For this injury no suit could have been maintained at common law against the husband and wife jointly. It would have been adjudged to be his act, his wife, at most acting conjointly with him, and under his presumed control. Nor has the statute wrought any change in this bearing of the question. If the wife had any part or lot in the keep of the dog, it can not be classed as her tort, "in the commission of which he did not participate." She could not keep the dog without his consent and participation. Hence the case is not brought within the provisions of the statute.

A further argument. Let us suppose the husband had been sued, and he had pleaded in bar that the wife owned and kept the dog. Every one will say such defense would be frivolous. The husband, the head and governor of the family must be held accountable for the economy and administration of the household. This power and right have not been taken away or im-

paired by the statutes securing to married women their separate estates.

We are aware that we have given to this subject a somewhat extended consideration. We have done so because it brings before us, for the first time, the inquiry, to what extent, if any, our married woman's laws have changed the relations of the husband to the household and its government. We have felt that so grave a question should not be slurred over, but should be clearly and definitely settled. And notwithstanding our statutes have revolutionized the property rights of the wife, they have effected no change in the headship, the dominion and control of the husband over the household, or in the government of the home and its appurtenants.

Charges 6 and 7 asked by defendant are in strict accord with the principles we have declared, and each of them should have been given. We need not consider any other rulings.

Reversed and remanded.

McCLELLAN, J. dissenting.