## SCHWARTZ vs. THE CITY OF OSHKOSH.

*September 20 — October 10, 1882.*

MUNICIPAL ORDINANCES. *(1) Publication and record. (2) Proof of publication: " City printer." (3) When amendment to inoperative ordinance not sustained as independent ordinance.*

1. Under the charter of the city of Oshkosh an ordinance, before it becomes operative, must not only be published in the official paper of the city, but must also be recorded in the book provided for that purpose together with the proper affidavit of the publication of such ordinance.

2. The same charter provides that the city printer or printers, immediately after the publication of an ordinance, shall file with the city clerk a copy of such publication "with his or their affidavit, or the affidavit of his or their foreman," of the length of time the same has been published. It is also made the duty of the common council to let all the printing and publication necessary to be done by the city to the lowest bidder, who shall be styled the "city printer." *Held*, that the publishers of a newspaper to whom the contract for such printing and publication has been let, are the city printers, and that an affidavit of the publication of such an ordinance by " one of the publishers " of such paper is a sufficient compliance with the charter.

3. An ordinance passed by the common council of a city, as an amendment to previous ordinances which never took effect, cannot be held valid, or sustained as an independent ordinance, where it is manifest that it would not have been adopted except on the assumption that the ordinances which it attempted to amend were in force.

Schwartz vs. The City of Oshkosh.

APPEAL from the County Court of *Winnebago* County.

Action to recover $105 paid under protest by the plaintiff, a theatrical manager, as license fees to the chief of police of the defendant city. The money was paid by the officer into the city treasury and the claim of the plaintiff therefor, duly filed, was disallowed. The charter of the city authorizes the common council, by ordinance or resolution, to license and regulate theatrical performances, etc. It also provides that before ordinances or resolutions of the common council "shall be in force, they shall be published in the official paper of said city, and shall be recorded by the city clerk in books provided for that purpose. But before any of said ordinances or resolutions . . . shall be recorded, the publication thereof respectively may be proven by affidavit, and said affidavit shall be recorded therewith, and at all times shall be deemed and taken as sufficient evidence of the time and manner of such publication." To show that the city had no right to collect the license fees in question the plaintiff introduced in evidence the records of ordinances. An ordinance "regulating public shows, concerts, exhibits, etc.," approved January 24, 1878, was recorded without any affidavit of its publication. Other ordinances amendatory of this, approved respectively September 9, 1879, and June 4, 1880, and an ordinance under which the fees in question were exacted from the plaintiff, passed January 4, 1881, were recorded together with affidavits of their publication.[1]

[1] Sec. 1 of the ordinance approved January 24, 1878, provides that it shall not be lawful for any person to exhibit any show, etc., without first having obtained a license therefor. Sec. 2 specifies the amounts to be paid for licenses for various kinds of shows. Secs. 3–5 declare the construction of the words show, etc., used in the ordinance, and provide that it shall be the duty of the mayor to grant licenses upon payment of the amounts fixed, and that each license shall specify the time of its duration, etc. Sec. 6 provides a penalty for the violation of the ordinance.

The ordinance passed January 4, 1881, provides a substitute for

Other facts will appear from the opinion. The case was tried by the county court without a jury. The court found that no proper evidence of the publication of any of the ordinances above mentioned was ever recorded therewith; that the same were, therefore, not in force and that the exaction of the license fees was illegal. From a judgment in favor of the plaintiff, the defendant appealed.

For the appellant there were briefs by *Charles Barber*, as attorney, and *M. H. Eaton*, of counsel, and oral argument by *Mr. Barber:* To the point that the ordinance under which the money was paid was a re-enactment rather than an amendment of the previous ordinances, and as such could stand alone as an independent ordinance in itself containing clear requirement capable of being carried into effect, they cited: *State v. Andrews*, 20 Tex., 230; *State v. Ingersoll*, 17 Wis., 631; *Blake v. Brackett*, 47 Me., 28; *School District No. 5 v. School District No. 10*, 73 Ill., 252; *Spring Valley Water Works v. San Francisco*, 22 Cal., 434.

For the respondent there was a brief by *Hooper & Berry*, and oral argument by *Mr. Hooper:* They argued, *inter alia*, that an ordinance and the affidavit of its publication must be recorded together. The proceedings of the authorities of a municipal corporation are like those of courts of inferior and limited jurisdiction. What the charter requires to be done must be done and shown to be done by such a record as the law requires to be made. *Hayes v. Appleton*, 24 Wis., 542; *Eldred v. Leahy*, 31 id., 546; *Canfield v. Smith*, 34 id., 381; 1 Dillon on Munic. Corp., § 423; *Klais v. Pulford*, 36 Wis., 587. The ordinance seeks to impose terms for doing what is in itself neither unlawful nor immoral. It is the right of every citizen that there shall be a record to which he can resort for conclusive information as to those terms, and his

sec. 2 of the original ordinance as amended, "to read as follows: Sec. 2. That the amount to be paid for license to exhibit within the city shall be as follows for each performance," etc.

liability for neglect to comply with them. He is not bound to act upon oral statements, or search in newspaper files. It is therefore a case in which the word *may* should be construed *must* or *shall*. *Cutler v. Howard*, 9 Wis., 309; *Market National Bank v. Hogan*, 21 id., 317.

COLE, C. J. We are inclined to the opinion that the city charter requires that an ordinance before it becomes operative must not only be published in the official paper of the city, but it must also be recorded in the book provided for that purpose, together with the proper affidavit of the publication of such ordinance. The charter makes the recording of the affidavit with the ordinance one of the essential conditions to its validity. It will be observed that the language of the charter on the subject is imperative; that before the ordinance shall be recorded, the publication thereof may be proven by affidavit, "*and said affidavit shall be recorded therewith*, and at all times shall be deemed and taken as sufficient evidence of the time and manner of such publication." Laws of 1877, ch. 123, subch. 6, sec. 3. It is quite beside the inquiry to speculate as to what object the legislature had in view in providing that the ordinance and affidavit of publication should be recorded as prerequisites to the ordinance taking effect. The legislature might have deemed it a matter of public concern that there should be not only a record of the ordinance, but also a record of the affidavit, to which all persons might resort in order to ascertain what ordinances had been published and were in force. But, whatever may have been the object of the legislature in that regard, certain it is that a record of the affidavit is made essential to an ordinance taking effect. The charter so reads, and we have no right to make void the provision by saying it does not mean what the language plainly implies. It follows from this construction of the charter that the ordinance approved January 24, 1878, was never in force, for the

reason that no affidavit of its publication was ever made, and of course none was ever recorded.

Again, the charter provides that the city printer, or printers, immediately after the publication of an ordinance, shall file with the city clerk a copy of such publication, " with his or their affidavit, or the affidavit of his or their foreman," of the length of time the same has been published, and such affidavit is made conclusive evidence of the publication of such ordinance. Sec. 18, subch. 5. Now, in respect to the ordinance approved September 11, 1879, the one approved June 4, 1880, and the one passed January 4, 1881, the affidavit of the publication of each respectively was made by " one of the publishers" of the official paper. Now it is objected that this is not a compliance with the charter, which requires the affidavit of publication to be made by " *the printer*" or "*foreman.*" It is made the duty of the common council to let all the printing and publication necessary to be done by the city to the lowest bidder, who shall be styled " the city printer." The charter makes the person who does the work, or causes it to be done, the city printer; or, in other words, makes the publisher of the official paper the city printer. It may well be that the publisher, or the responsible party who obtains the contract, may not do any of the manual labor performed in printing the paper, still we think he is one of the persons who may, under the charter, come within the designation of " city printer." We therefore conclude that the affidavit made by the publisher of the city paper is sufficient.

The money in this case was exacted of the plaintiff under the ordinance passed January 4, 1881. That ordinance attempts to amend the previous ordinances in regard to license, but is not signed by the mayor. But the clerk certifies, under date of January 5th, that it was passed by the common council on the 4th of January; that on the 5th he presented it to the mayor for his approval; that the

mayor had not approved it, nor returned it with his objections in writing within five days after he received it. The counsel for the city claimed that the ordinance took effect under sec. 3, subch. 6, notwithstanding the failure of the mayor to approve it. That section provides that if an ordinance is not signed by the mayor nor returned by him to the city clerk, with his objections in writing, within five days from the time he received it, the ordinance shall be in force in the same manner as if the mayor had signed it. It is apparent that the certificate of the clerk is self-contradictory, and it is not clear what effect, if any, it should have as a record. But not to dwell on the point, the ordinance must be deemed invalid because it is an amendment to one which was never in force. The same counsel further claimed that this ordinance might well stand as a valid independent ordinance, embracing within itself all the essentials of a legal ordinance. But professedly it was passed as an amendment to previous ordinances which never took effect. It is very manifest that the common council would never have adopted it, except on the assumption that the ordinances which it did attempt to amend were in force. The ordinance in question contains no penalty for a violation of its provisions; the common council, doubtless, supposing that the 6th section of the ordinance of January 24, 1878, was in force and would apply. There is no reference to that section, it is true, and the ordinance stands without the sanction of any penalty. It seems to us it would be a violation of the plain intention of the common council, manifest in all these ' ordinances, should we sustain the last one as an independent, subsisting ordinance. We think we cannot do this.

The judgment of the county court is correct, and must be affirmed.

*By the Court.*— Judgment affirmed.