# Toole *v.* The State.

*Indictment for Selling Spirtuous Liquors in violation of Local Prohibitory Law.*

1. *Local prohibitory law in Calhoun county; publication of notice of result of election.*—Under the provisions of the local statute approved Dec. 7th, 1886 (Sess. Acts 1886-7, p. 671), an election was required to be held in Calhoun county, on the filing of a petition by fifty or more householders and freeholders, to ascertain the wishes of the people as to prohibiting the sale of intoxicating liquors in the county; it was made the duty of the judge of probate to record the result, as counted and returned by the board of supervisors, and, if the result was in favor of prohibition, " to give notice for thirty days, by publication in all the newspapers published in the county;" and it was declared (sec. 5) that, " after the ex-

[Toole v. The State.]

piration of said thirty days notice, it shall be unlawful for any person "
to sell or give away any spirituous liquors in the county, and (sec. 6)
that any person or persons, who shall violate the provisions of the pre-
ceding section (5), shall be guilty of a misdemeanor :"  *Held*,  (1) that
the provision requiring notice of the result by publication in the news-
papers was mandatory and imperative, and was a condition precedent
to the binding force of the prohibitory and punitive clauses ; (2) that a
prosecution could not be maintained for a subsequent sale of intoxicating
liquors, without proof that such publication was made as required ; and
(3) that an order for the publication of notice, entered on his minutes
by the judge of probate, and a form of notice dated seven days after-
wards, both included in a certified transcript from his office, did not
tend to prove that publication was made as required, and were not ad-
missible as evidence.

FROM the City Court of Anniston.

Tried before the Hon. W. F. JOHNSTON.

The indictment in this case was found in April, 1889, and
charged that the defendant, Harry Toole, " did sell spirituous,
vinous, or malt liquors, without a license, and contrary.to
law." On the trial, it appeared that the prosecution was
founded on an alleged violation of the local law applicable to
Calhoun county, approved Dec. 7th, 1886, and entitled, " An
act to prohibit the sale, giving away, or otherwise disposing
of spirituous, vinous or malt liquors, or intoxicating bitters,
or patent medicines having alcohol as a base, in Calhoun
county."—Sess. Acts 1886-87, p. 671. This statute contains
ten sections, the first of which provides, that on the filing of
a petition by fifty or more resident householders and free-
holders of the county, praying for an election to ascertain
the wishes of the people as to prohibiting the sale of intoxi-
cating liquors in the county, it shall be the duty of the judge
of probate to order an election for that purpose; the second
section provides for notice of the election, the appointment
of inspectors, &c.; and the third section, that the election
shall be governed by the general election laws. The fourth
section provides for the casting of votes for and against
prohibition, and then adds: " When the votes so cast are re-
turned and counted by the board of supervisors, as now
required by law, if it be found that a majority of all the votes
cast and so counted are for prohibition, then it shall be the
duty of the probate judge to record the result in his office,
and to give notice for thirty days, by publication in all the
newspapers published in the county, that a majority of the
qualified voters, who voted at said election, voted for pro-
hibition." *Sec.* 5. " That after the expiration of said
thirty days notice, it shall be unlawful for any person, firm
or corporation, to sell, give away, or otherwise dispose of

any spirituous, vinous or malt liquors, or intoxicating bitters, or any brand of bitters or medicines with sufficient alcohol or spirituous liquors therein to make a man drunk, within the county of Calhoun." *Sec.* 6. "That any person or persons, who shall violate the provisions of the preceding section (5), shall be guilty of a misdemeanor, and, on conviction, shall be fined," &c. The seventh section makes it a misdemeanor for any person to sell or give away any spirituous liquors on the day of the election, or within two days next preceding. The eighth section declares exceptions as to wines sold for sacramental purposes, domestic wines, &c. *Sec.* 9. "That this act shall be so construed, that if an election is held, in pursuance of its provisions, during the year 1887, the prohibition provided for by the 5th and 6th sections shall not take effect till after 30th April, 1887; and the probate judge of said county shall not issue to any person or persons a liquor license from the 1st day of January, 1887, for a longer period than the 30th day of April, 1887." The tenth section relates only to other prohibitory laws, declaring that they shall not be affected by the provisions of said special statute.

On the trial, as the bill of exceptions shows, the State introduced a witness who testified that, in the summer of 1888, he bought a glass of lager beer from the defendant, within the limits of the county; and then announced, in answer to an inquiry by defendant, that the State proceeded for a violation of said local law. The defendant then moved " to exclude said evidence from the jury, because it had not been shown that the election provided for in said act had been held, or that its result was in favor of prohibition." The State then offered in evidence a transcript, duly certified, from the records of the Probate Court, showing (1) a petition for an election, signed by more than fifty citizens, which was filed on the 28th December, 1886; (2) an order for an election, founded on said petition; (3) the return of the supervisors as to the result of the election, showing 1422 votes in favor of prohibition, and 1009 against it, filed February 19th, 1887; (4) an order of the probate judge, dated February 19th, 1887, for the publication of notice of the result of the election in all the newspapers of the county; and (5) a notice, or form of notice " of result of prohibition election," signed by the judge of probate, and dated February 26th, 1887. The defendant objected to the admission of this transcript as evidence, and of each paper contained in it, and

especially of the notice, because it was not shown that said
notice had ever been published as required by said special
statute.    The court overruled the objections, and the defend-
ant excepted.    This being all the evidence, and a jury having
been waived, the court rendered judgment finding the de-
fendant guilty as charged; to which judgment and ruling he
duly excepted.

G. MACDONALD, and TOMPKINS & TROY, for appellant.

WM. L. MARTIN, Attorney-General, and KNOX & BOWIE,
for the State.

McCLELLAN, J.—Among the questions prominent in
this case, as presented by the record and by admissions at
the bar, are those which involve the construction of the act
to prohibit the sale of liquor in Calhoun county, in respect
to the notice required by section 4 of that act; the effect the
omission of that notice has on the provisions of sections 5 and
6; whether, if the statutory requirement of notice is im-
perative, compliance with it had to be shown by the State on
the trial of this case; and, finally, whether such compliance
was shown.

The language of the statute, in the particulars under con-
sideration, is entirely free from ambiguity.    There can be no
misunderstanding of its provisions as to what notice should
be given, by whom it should be given, or the manner of
giving it.    In such cases, there is no room for construction;
the only legitimate function of which is to evolve the true
meaning of the law-makers, to bring certainty out of doubt-
ful expressions, and to replace ambiguity with clearness.    If
the expressions employed involve no uncertainty, they speak
for themselves, and the purpose they evince can not be
thwarted by any considerations that may enter the minds of
judges, affecting the wisdom or policy of the enactment.
Hence, it is not for this court to say, with respect to the
matter in hand, that when the legislature required publica-
tion in " all the newspapers published in the county," they
did an unwise thing, by putting it in the power of one news-
paper to defeat the requirement, at least, if not the whole law,
and therefore, that they must be held to have intended some-
thing other than that which they have clearly expressed.
Whether it was the part of wisdom for the legislature to an-
ticipate that the papers would publish the notice, rather than

11

that they, or any one of them, would from improper motives refuse to do so, we need not decide. Certain it is, that such provisions are not new to the laws of this State. Several of our general statutes predicate important proceedings on the publication of certain notices in the newspaper or newspapers of particular localities; and it has never been suggested even, that such notices could be permitted because, forsooth, the newspaper proprietors *might* refuse to publish them. The law is thus written in plain terms, and we are not authorized to take from, or add to, or change those terms in any particular by construction.—*Carlisle v. Goodwin*, 68 Ala. 137; *Reese v. State*, 73 Ala. 18; *Coffin v. Beck*, 71 Amer. Dec. 559, 563.

It is to be next considered, what the effect of the requirement of publication was on the prohibitions of the statute. Was it directory merely, or mandatory? And was compliance with it a condition precedent to the criminality of the acts specified in section 5? With regard to an enactment which requires a certain thing to be done, or done in a particular manner, without an express declaration of the consequences of non-compliance, it will be found generally correct to say, that nullification is the natural and usual result of disobedience, and that the thing required must be done in the prescribed manner.—Endlich on Statutes, § 433; *Comm'rs v. Gaines*, 3 Brev. (S. C.) 396; *Best v. Gholson*, 89 Ill. 465. And while the propriety of treating statutory provisions, under certain circumstances, as directory merely, is fully recognized, it is a power which verges so closely upon legislative discretion, as to be exercisable by the courts only with reluctance, and in extraordinary cases.—*Dryfus v. Bridges*, 45 Miss. 247. Another general rule may be deduced from the mass of adjudications on this subject: that is, that statutes are to be construed as directory merely, and as admitting of departure from compliance with their terms, only in conservation and furtherance of their supposed spirit and purpose.—*Aqueduct Proprietors v. Jones*, 7 Vroom (N. J.), 206. And as the legislature can, in no case, be held to have intended to perpetrate a private wrong, or to work out an undue advantage to any individual, or to lodge power to effect such results in the discretion of officers charged with the performance of prescribed duties, it is said, enactments will never be construed to be directory when " the act or omission can by any possibility work advantage or injury

to any one affected by it."—*Dryfus v. Bridges, supra; Best v. Gholson, supra.*

This reference to some of the abstract principles pertaining to the matter under discussion may be concluded with the generalization, that provisions which require a thing to be done at a certain time, or in a particular manner, will be interpreted as directory, when the courts can see and know that it may be done, so as to fully accomplish every substantial purpose of the law-makers, at or within some other time, or in some other mode than that pointed out by the statute; and that an imperative construction will be adopted, whenever any right would be preserved by strict compliance with, or, by possibility, prejudiced, defeated or denied, by a departure from the letter of the enactment. These considerations apply, more especially at least, to statutes which do not by their terms indicate the legislative purpose as to whether or not strict compliance is to rest in the discretion of those charged with their execution. Conceding for the moment that the provisions involved here are of this class, and that we must determine the point by a consideration of their general scope and character, rather than from the language which expresses them, it would seem that the result must be against the exercise of this discretion in the matter of notice.

It is unquestionably against all public policy, and all abstract conceptions of justice, that the citizen should be punished for an act not *malum in se*, of the criminal nature of which he is utterly ignorant when it is committed. It is true, that he may not plead ignorance of the laws of his country in justification, or even mitigation, of acts violative of those laws; but this doctrine is founded on necessity, not upon any theory of the natural justice of the rule; and the fact that it exists is no reason for emasculating a provision which is intended to replace the harsh and, not infrequently, most unfounded presumption of knowledge, by a more humane and just rule of guilt only after notice of the illegality of the thing done. The purpose to make this substitution, so to speak, may well be imputed to the legislature, with respect to a highly penal statute, which left their hands without being a complete law, and depended for its final effect upon the subsequent action of the people of Calhoun county; action of which, in all theory at least, there is not that propriety of holding the citizen to a knowledge, which obtains to a thing done by all the people met together in General Assembly. It is easily conceived how the failure to give the precise

notice required by the act might result to the injury of individuals in that county, whether residents there or transients. The notice was a natural and reasonable requirement. It had a beneficent office to perform in the scheme of prohibition. The *prima facie* presumption, as we have seen, is that the provision requiring it was intended to be executed according to its terms. The courts can not see that the legislative purpose could be met as well without compliance, nor that no right would be prejudiced or injury effected by its omission. It would seem, therefore, that guided solely by the purpose of the legislature, as gathered from a general view of the statute, we should reach the conclusion, that the requirement that a certain notice should be given is imperative.

But, whatever doubt might attend upon a conclusion so attained, is dispelled when regard is had to the particular words employed. The notice is required in plain and unambiguous terms, as shown above, to be given in a certain way, for thirty days. The succeeding section provides, that "*after the expiration of said thirty days notice,*" the act for which appellant was convicted should be unlawful. No other provision of this statute makes a crime of that act. The language imports criminality only in a certain event. That event is not the vote of the people favoring prohibition. It is not the entry of that result as a record in the office of the probate judge. It is the perfection of the notice of that result by publication in all the newspapers of the county for thirty days. Before that was done, the act charged was not a crime. Here, also, is the absence of that ambiguity which alone authorizes resort to construction. "Compliance with the particular provision is made, in terms, a condition precedent to the validity or legality of what is done," or, to speak more aptly, to the illegality of the act charged; and non-compliance is fatal to legality in the one instance, and to criminality in the other.—Endlich on Statutes, § 431. The case is on all fours with those referred to in the text cited, in which it is held that, where the deed of a married woman was to take effect "when" the certificate of her acknowledgment of it was filed; or, where it was provided that no appeal should be entertained, "unless" certain rules were complied with; or, where the doing of a thing was prohibited "until" another had been done (as here, the doing of the thing charged is allowed until another has been done); or, where certain certificates were transferable "only" in a

[Toole v. The State.]

prescribed manner, the omission of the statutory require-
ment is fatal.—*Jolly v. Hancock*, 7 Exch. 820; s. c., 22 L.
J. 38; *In re Dickinson*, 51 L. J. Ch. D. 736; *Slayton v.
Hulings*, 7 Ind. 144; *Union Bank v. Laird*, 2 Wheat. 390.

Another view: As we have said, this statute did not come
from the hands of its makers as a complete law. Its opera-
tion was made to depend on certain things to be done by the
probate judge, and people of Calhoun county. The presump-
tion which holds all the people of the State to a knowledge
of their own acts in General Assembly, for such is the theory,
can have no application to the acts of the people of a county,
and of the county officers, intended to affect not only them-
selves, but all the people of the State within their borders.
The power to do these acts, and thus put the statute into
operation, is certainly, in some sense, the delegation of legis-
lative functions. It is justified and taken out of constitu-
tional inhibitions, upon the same grounds that the grant of
legislative powers to municipal corporations is held to be con-
stitutional; that the statute is a police regulation of local ap-
plication, in respect to which it is proper that local judg-
ment should control.—Cooley's Const. Lim. pp. 147, 148.
The authority to a municipality, strictly so called, or to a
county, or any other local subdivision of the State, to thus
breath life and force into a statute otherwise dormant, is
usually, if not always, hedged about by specifications as to
how the locality is to act, and impart efficacy to the regula-
tions. Among such specifications the most frequent, per-
haps, is that which requires notice to be given that the action
which has this important effect has been had, to the end that
not alone the community itself and all members of it, but all
other citizens of the State, and the public generally coming
into the locality, may be apprised of the law to which they
must conform. These provisions for notice are the substi-
tutes as to such local matters for the presumption the law
indulges as to knowledge of general statutes. The reason
for them is the same in the case of a county proceeding under
a law like the present one, and in the case of a town pro-
ceeding under its charter, or a special law. They are in-
tended to accomplish the same purpose; they meet the same
necessity. We can conceive no reason for giving them a
different interpretation in the case of the county, that would
be applied to them with respect to a town. We accordingly
hold, that the notice required by this act stands upon the
same footing in the relation it bears to the operative force

of the statute with notices of the adoption of ordinances required to be given by municipal corporations. As to these latter, the doctrine is thoroughly established, that the publication required is a condition precedent to the validity of ordinances, and that the burden of proving such publication is on the party seeking to enforce them.—Horr & Bemis Mun. Corp. §§ 52, 53, 187; *Desmoines v. Gilchrist*, 67 Iowa, 210; *Onesby v. Louisville*, 4 Amer. & Eng. Corp. Cases, 342; *Verona's Appeal*, 108 Pa. St. 83; Wait's Act. & Def., p. 610, § 7; *Higley v. Bunce*, 10 Conn. 435; *Schwartz v. Oshkosh*, 55 Wis. 490.

And this doctrine, applicable, as we hold, to all statutes providing police regulations for a given locality subject to the action of the locality in accepting or rejecting them in the manner provided by the statutes themselves, obtains also with respect to a general law of the State, containing a provision that it shall take effect from its publication in a certain number of newspapers. In such case, the act does not go into operation until there has been strict compliance with this requirement. — *Welch v. Battern*, 47 Iowa, 150. Though a requirement to the effect that an act shall be published in the newspapers of certain towns by the Secretary of State, without any indication of legislative purpose that its operation should be postponed, or that its penalties should not be imposed, until after such publication, is directory, and non-compliance with it would not invalidate the enactment. *State v. Click*, 2 Ala. 26.

We do not consider that section 9 of the act, which contains provision with reference to the issuance of licenses to sell liquors, exerts any influence on sections 4, 5 and 6. On the contrary, we apprehend that section 9 proceeds on the assumption, that all requirements of the law essential to its complete efficacy have been complied with; and its restrictions on the power to issue licenses depends upon the fact, that "the prohibition provided for by the 5th and 6th sections" has been put into operation according to the terms of the act.

In considering the question of whether there was any proof of compliance with the law in the matter of notice, we may at once discard the alleged order for such notice entered by the probate judge, and also the copy of the notice, or form of notice, transcribed and certified from the books of that office. There is no authority in the statute for the order, or for its record, or for the record of the notice. They have

no legal *status*, or existence, and occupy no higher plane as evidence in this case than would the certificate of an individual, that he had made the order and drawn up a form of notice, and had entered both the order and notice on a book kept by him. Moreover, they have no tendency whatever to prove the fact in issue, which is that the notice was published for thirty days in all the newspapers of the county. The court erred in admitting copies of this order and notice as certified by the probate judge.

There are two controlling reasons for our non-concurrence in the contention of the appellee, that the presumption of law, that a public officer has performed a duty imposed on him, avoids the necessity for other evidence of compliance with the requirement that notice should be given. We understand the rule to be, in this regard, that where an officer undertakes to discharge a public duty, enters upon its performance, and does in fact in some manner, or to some extent discharge it, the law will presume that his acts in that behalf are free from irregularity; but this presumption can never extend to the doing of an independent, material and substantive act, so as to hold the thing done merely because it ought to have been done, and it was the duty of the officer to do it.—2 Whart. Ev. §§ 1318, 1319; *United States v. Ross*, 92 U. S. 281. Again, the fact here involved, and sought to be rested on the presumption of the performance of duty, lies, in its final consummation, beyond the line of official duty. The act depends for its efficient completion upon actual publication of a notice in certain newspapers. We might assume that the judge of probate did every thing possible for him to do under the act; and yet, without the further assumption that the proprietors of the papers referred to published the notice given them by the probate judge to publish, for thirty days, we could not reach the conclusion that the requirement of the statute had been complied with. There is no principle of law, upon which courts can indulge the presumption that private persons have performed a material act so as to dispense with affirmative evidence of the fact.

We conclude, that the publication of the notice of the result of the election held under this act, for the time and in the manner required by it, was a condition precedent to the operation of sections 5 and 6; that the burden was on the State to show that said notice had been given, and that it failed to produce any evidence to establish the fact. This

[Cotton v. The State.]

view renders the consideration of other points presented by the record unnecessary.

The judgment of the City Court is reversed, and the cause remanded.