# Olmstead *v.* Crook.

*Application for Mandamus to Probate Judge, on Refusal of License to Retail Spirituous Liquors.*

1. *Local prohibitory liquor law in Calhoun county; when election might be called and held; when penal law takes effect.*—Under the local law approved December 7th, 1886, relating to the prohibition of the sale of spirituous or intoxicating liquors in Calhoun county, as dependent on the result of a popular election, to be held in the county under its provisions (Sess. Acts 1886-7, p. 671), the 9th section, which declares that, if the election shall result in favor of prohibition, the prohibition "shall not take effect until the 30th day of April, 1887." shows that the General Assembly contemplated an election, and the publication of notice of the result thereof, as required by the statute, before that day; and the election having been regularly called and held soon after the passage of the statute, but before the adjournment of the General Assembly, it was a valid compliance with the first four sections of the statute, and the case was taken out of the general statute prescribing the time when penal statutes go into effect (Code, § 3705), although the punitive provisions of the law did not go into effect, by its own terms, until the expiration of thirty days after the publication of notice of the result of the election.

2. *Same; order for election, by judge or court.*—An order for an election under said local law, signed by the judge of probate, based on a petition filed by the requisite number of householders and freeholders, and referring to said statute as its authority, will be held, on collateral attack, to be act of the judge, and not of the court, although it is entitled of a special term of the court, and purports to be ordered "by the court."

3. *Same; publication of notice of result of election.*—The punitive provisions of said statute, contained in the 5th and 6th sections, do not take effect until after the expiration of thirty days from the publication of notice of the result of the election in favor of prohibition, as prescribed; but no time is specified within which such publication must be made; and the first publication being abortive and insufficient (*Toole v. State*, 88 Ala. 158), subsequent publication might be made and perfected,

[Olmstead v. Crook.]

as required by said statute, and thereby put its punitive provisions into force and effect.

4. *Same; subsequent charter of Anniston, authorizing license of retailers.*—The statute approved February 23, 1889, amending the charter of Anniston, and authorizing the corporate authorities thereof "to license, tax, and regulate auctioneers, grocers. retailers," &c., does not, *proprio vigore*, supersede or repeal, within the limits of the city of Anniston, the provisions of said local prohibitory law for the county; but, when the corporate authorities exercise the power conferred on them by said amended charter, and license or otherwise authorize the sale of spirituous liquors in Anniston, such ordinance would supersede and annul the general law governing the county.

APPEAL from judgment of Hon. LEROY F. BOX, presiding in the Circuit Court of Calhoun, refusing to grant *mandamus* to Hon. EMMETT F. CROOK, judge of probate of said county, requiring him to issue to the petitioner, Percy Olmstead, a license to retail spirituous liquors at a designated place within the limits of the city of Anniston. Judge *Crook* refused to grant a license to the petitioner, on the ground that a local prohibitory law, approved December 7th, 1886, was in force in Anniston; and Judge *Box*, approving that decision, refused to grant a *mandamus*. The appeal is prosecuted under the provisions of the general statute. Code, § 3616. The opinion states the facts.

GORDON MACDONALD, and KELLY & SMITH, for appellant. (1.) The local statute authorizing the prohibition of the sale of spirituous liquors in Calhoun county, never became operative, because the popular election was never authorized, held, or certified, nor the result published, as required by the terms of said act. The order for the election was made by the Probate Court, while the power to act in the matter was conferred on the judge of probate, and his action was ministerial merely.—*Ex parte Trice*, 53 Ala. 546; 60 Ala. 429. The statute is highly penal, and did not go into effect until thirty days after the adjournment of the General Assembly which passed it (Code, § 3705); and yet the petition was filed, the election ordered and held, and the machinery put in motion to make the penal clauses operative, before the adjournment of the General Assembly.—Cooley's Const. Lim., 5th Ed., pp. 188-91; *Wheeler v. Chubbuck*, 16 Ill. 361; *Howe's Estate*, 112 N. Y. 100; *Childers v. Lamberson*, 63 Amer. Dec. 462; *Rice v. Ruddiman*, 10 Mich. 125; *Rogers v. Vass*, 6 Iowa, 405; *People v. Johnson*, 6 Cal. 673; *Engine Co. v. Hubbard*, 101 U. S. 188; *Prince v. Hopkins*, 13 Mich. 318; 34 Ill. 293; 15 Pac. Reporter, 772. Even if

[Olmstead v. Crook.]

the election was regular and valid, publication of notice of the result has never been perfected as contemplated by the law. The first publication was abortive (*Toole v. State*, at present term), and the second was made nearly three years after the election,—an unreasonable delay. (2.) The city of Anniston was authorized by its charter of 1878-9, p. 353 of Sess. Acts, to license the sale of spirituous liquors; and this provision was not in any manner affected by the subsequent general statute applicable to the county.—Endlich on Statutes, § 228; Dillon's Mun. Corp., §§ 87-8. (3.) The amended charter, approved February 23d, 1889 (Sess. Acts 1888-9, pp. 601-24), also expressly authorizes the license of retailers; and this necessarily supersedes and repeals all former inconsistent laws.—*DeBar v. State*, 58 Mo. 395; Endlich on Statutes, pp. 251, 269, § 234; Dill. Mun. Corp. § 88; *State v. Clark*, 14 Amer. Rep. 471; *Camp v. State*, 27 Ala. 53.

BROTHERS, WILLETT & WILLETT, and CALDWELL & JOHNSTON, *contra.*—A license was properly refused to the petitioner in this case, because the local prohibitory law of December 7th, 1886, was then in force in Calhoun county. Some of the provisions of that law are penal, and, by its own terms, they did not take effect until after the publication of notice as prescribed; but the other provisions took effect from the day of its approval by the executive.—Endlich on Statutes, § 332; Cooley's Const. Lim., 123, 125, 154, and notes. The election being valid and regular, no license could legally be granted, though no criminal prosecution could be maintained until after the publication of notice as prescribed. The law did not prescribe or limit the time within which the publication of notice should be perfected, nor could any one be injured by the delay; and as matter of fact, shown by the record of this and other late cases, the notice was perfected as soon as this court held the former notice insufficient. The amended charter of the city of Anniston has no bearing on the case, since it is not shown that the city has adopted an ordinance licensing retailers.

CLOPTON, J.—The appeal is taken from an order of the judge of the seventh judicial circuit, denying appellant's application for a *mandamus* to compel the probate judge of Calhoun county to issue to him a license to retail spirituous liquors within the corporate limits of the city of Anniston.

[Olmstead v. Crook.]

The application to the probate judge substantially conformed to the general laws regulating the manner in which such licenses may be obtained; and was refused by the judge of probate on the sole ground, that the sale of such liquors in Calhoun county is prohibited by law. The appeal brings for consideration the validity and effect of the proceedings instituted and completed to put into operation "An act to prohibit the sale, giving away, or otherwise disposing of spirituous, vinous or malt liquors, or intoxicating bitters, or patent medicines having alcohol as a base, in Calhoun county," approved Dec. 7, 1886.—Acts 1886-7, p. 671.

The first four sections provide, that whenever fifty or more resident house-holders and free-holders of the county file in the office of the judge of probate a petition in writing, praying for an election to ascertain the wishes of the people as to the prohibition of the sale of intoxicating liquors in the county, it shall be the duty of the judge to order an election, and fix the time of holding the same, not more than sixty, nor less than thirty days from the time of filing the petition; and thereupon, the sheriff is required to give, by publication, notice of the time of holding, and the purpose for which such election is held, for forty days. Provision is made for the appointment of inspectors and returning officers, and for holding an election in the several precincts of the county, at the time appointed, which shall be governed in all respects, with an immaterial exception, by the general election laws which may be in force at the time. All persons who are at the time qualified voters, shall be entitled to vote at such election; and if, upon the return and count of the votes cast, it be found that a majority of all the votes cast is for prohibition, "then it shall be the duty of the probate judge to record the result in his office, and to give notice for thirty days, by publication in all the newspapers published in the county, that a majority of the qualified voters, who voted at said election, voted for prohibition." The fifth section declares, "that after the expiration of the thirty days notice, it shall be unlawful for any person, firm, or corporation to sell, give away, or otherwise dispose of any spirituous, vinous or malt liquors, or intoxicating bitters, or any brand of bitters or medicines with sufficient alcohol or spirituous liquors therein to make a man drunk, within the county of Calhoun;" and the sixth section makes a violation of the provisions of the fifth section a misdemeanor, punishable by fine and imprisonment, or hard labor for the county.

[Olmstead v. Crook.]

The constitutionality of the act is not assailed; but it is contended, that it has not been legally put into operation. On December 28, 1886, a petition in writing, signed by more than fifty resident house-holders and free-holders, substantially conforming to the requirements of the act, was filed in the Probate Court; and on the same day, the judge of probate, reciting therein the filing of the petition, the title of the act, and the provisions of the first section, made the following order: "It is therefore ordered by the court, that the prayer of said petitioners be, and is hereby granted, and that an election be held in each and every precinct of said county of Calhoun in pursuance of said act, on the 17th day of February, A. D. 1887. It is further ordered, that the sheriff of said county shall give notice of said election as required by said act." An election was held on the day appointed, and a majority of the votes cast were for prohibition. The petition was filed, the order for an election made, and the election held before the adjournment of the General Assembly. It is contended, that these proceedings, having been taken before the act could go into effect under the general statute, are nullities. The contention is rested on the penal character of the act, and on section 4448 of the Code of 1876, then in force, which provided: "No penal act shall go into effect until thirty days after the adjournment of the legislature at which such act may be passed." The legislature adjourned February 28, 1887.

The Constitutions of many States contain a clause prohibiting any public act, or law of a general nature, from taking effect until the expiration of a specified time after its passage, or from the end of the session at which the same was passed, or after its promulgation, unless the General Assembly shall otherwise direct in the prescribed manner. The courts, in construing such constitutional prohibition, have held, that such direction must be in a clear, distinct, and unequivocal provision, and can not be aided by intendment, or implication; and must direct that the act, as a whole and entirety, shall take effect at a different time than provided in the Constitution.—*Wheeler v. Chubback*, 16 Ill. 361; *Rice v. Ruddiman*, 10 Mich. 125. These, and other decisions cited by counsel, construing these constitutional provisions, and determining the time when certain acts under their operation took effect, shed but a dim light on the question involved, and afford but slight assistance in its solution. The legislature could not disregard or repeal them. The rule in this State is a mere

[Olmstead v. Crook.]

legislative enactment, a statutory rule, which the General Assembly is competent to abrogate entirely, or to specially exempt a new enactment from its operation, by prescribing a different time at which it shall take effect, expressly or by clear implication—a partial repeal or suspension.—*Henback v. State*, 53 Ala. 523.

A comparison of the ninth section of the act with the other provisions will solve all doubt as to the time when it was intended the different provisions should go into operation. That section provides: "That this act shall be so construed, that if an election is held in pursuance of its provisions during the year 1887, the prohibition provided for by the fifth and sixth sections of this act, shall not take effect till after the 30th day of April, 1887, and that the probate judge of Calhoun county shall not issue to any person or persons a liquor license from the 1st day of January, 1887, for a longer period than the 30th day of April, 1887; and if the result of the election is in favor of 'against prohibition,' then the said judge of probate can issue liquor license from the 30th day of April, 1887, under the law as it now is." Manifestly, it was contemplated that an election might be held in 1887, the result ascertained, and the requisite notice thereof given, so as to put the penal sections of the act into operation prior to the 30th of April, 1887; hence the express provision, that the fifth and sixth sections shall not in any event take effect, until after that date. Unless the provisions providing the mode for ascertaining the wishes of the people had force and effect from the passage of the act, notice of the time of holding the election, the ascertainment of the result, and notice thereof for thirty days in all the newspapers, could not have been effected so as to put the act into operation by the 30th day of April. Whether the act should take effect at all, was dependent upon the wishes of the people, ascertained by an election; and though the result might be in favor of prohibition, the fifth and sixth sections, which constitute the penal parts, could not have taken effect until after the 30th day of April, 1887, more than sixty days after the adjournment of the legislature. By the terms of the act, the sections providing and regulating the proceedings for ascertaining the will of the people, and the punitive sections, took effect at different times. By prescribing a different time for the penal sections to take effect, the act is exempted from the operation of section 4448, and the first four sections, under the general rule, took effect from the date of its approval by the executive.

[Olmstead v. Crook.]

It is also insisted, that the election is a nullity, for the further reason, that the order therefor purports on its face to have been made by the court, whereas the authority to make the order, and fix the time for holding the election, is conferred upon the judge, not the court. The mere recital in the order, "it is therefore considered by the court," is not conclusive. Conceding that the authority is conferred on the judge, then he may exercise it in term time or in vacation; in this instance, it was at a special term. It recites all the jurisdictional facts substantially in the language of the statute, including the duty of the judge to order an election and fix the time for holding the same. It is signed by the judge, and professes to have been made under the statutory authority, to which it must be referred. That it was in fact made by the judge sufficiently appears, to sustain its validity against a collateral attack.

The election was held February 17, 1887. Soon after the result was found to be in favor of prohibition, the judge of probate gave notice thereof in all the newspapers in the county for thirty days, excepting two. In *Toole v. State*, 88 Ala. 158; 7 So. Rep. 42, decided during present term, the sufficiency of the notice to put the act into operation was called in question for the first time. It was ruled, that the provision requiring notice of the result of the election by publication in all the newspapers published in the county for thirty days was mandatory and imperative, and a condition precedent to the operative force and effect of the punitive clauses of the act. Within a few days after this decision was announced, the judge of probate, on December 27th, 1889, again published notice of the result of the election, in all the newspapers then published in the county, and continued the publication for thirty days. We are not clearly informed on what ground it is contended that the last notice is unauthorized and ineffectual. Though *non-user* may be continued so long, that the course and character of the intervening legislation may be such as to render its provisions nugatory, or they may become purposeless, it does not, of itself, effect the repeal of a statute. The act made it the duty of the probate judge, ministerial in its nature, to give the required notice of the result of the election upon its ascertainment; the purpose being, that the people might have full time to become acquainted with the terms of the statute, which they are required to obey. Neither the failure, nor refusal, nor abortive attempt of the judge to give notice, can operate to

[Olmstead v. Crook.]

defeat the will of the legislature and the people. The act does not limit the time in which the notice must be given. The only effect of a failure to give notice immediately, or in a reasonable time after ascertainment of the result of the election, is to suspend the force and operation of the penal provisions. The judge undertook to discharge this duty, but failed; and when it was decided that the first notice was insufficient, he at once gave the requisite notice. The duty imposed on him by the statute remained imperative, the performance of which could have been compelled. The act took effect after the expiration of the thirty days notice last given.

"An act to amend an act entitled 'An act to incorporate the town of Anniston, Calhoun county, Alabama,' approved February 1, 1879, and the various acts amendatory thereof," was passed by the General Assembly, and approved February 23, 1889.—Acts 1888-9, p. 601. By this act, which seems to be a complete revision of all previous acts, and to cover the entire subject of the powers of the municipal government, the city of Anniston was incorporated. By the seventh section, power is conferred upon the mayor and city council "to license, tax, and regulate auctioneers, grocers, merchants, retailers, . . . and all other privileges." The legislative intent, that the term "retailers" should be used in the legal and ordinary signification, which by long continued use it has acquired in our statutory vocabulary, is too clear to admit of doubt. Unless so, the term as employed is without distinctive meaning, for merchants, grocers, confectioners and other persons engaged in mercantile pursuits, who sell at retail, are specially named. *Harris v. Intendant of Livingston*, 28 Ala. 577. It is contended that this act, being a later enactment, operates to repeal the act of December 7, 1886, prohibiting the sale of intoxicating liquors in the county. Undoubtedly, when the provisions of a special act, in respect to a particular municipality, passed subsequent to an act of a general nature, are so inconsistent with the provisions of the latter, as that they can not operate together within the same territorial limits, the effect is to take the municipality out of the operation of the general law. But the conferring of power on the municipal authorities to tax, license, and regulate the retailing of spirituous liquors, does not, *ipso facto*, repeal the general law, prohibiting the sale of such liquors in the county. When an ordinance is passed for that purpose, its effect is

[Olmstead v. Crook.]

to suspend the operation of the general law within the corporate limits, which suspension continues so long, and only so long, as the ordinance is continued in force—a temporary repeal. Until such ordinance is passed, the general law prevails. In such case, it is the by-law or ordinance, passed by legislative authority, which operates to repeal *pro tanto* the general law.—*St. Johnsbury v. Thompson*, 59 Vt. 300.

Counsel for appellant cite the case of the *State v. DeBar*, 58 Mo. 395. In 1870, the charter of the city of St. Louis was amended, so as to confer power to regulate or suppress bawdy-houses. In consequence of a decision of the Supreme Court, the charter was again amended in 1874, by substituting the words "to suppress, but not to license bawdy-houses." After this last amendment, the defendant was indicted, under the general law of the State, for keeping a bawdy-house in the city of St. Louis. The court ruled that the amendment of 1874, which repealed the amendment of 1870, did not revive the general criminal statute in the city, on the ground that the general law contained a provision, that the repeal of a law should not, by implication, revive a former law. In speaking of the case of *State v. DeBar*, Judge Dillon says, in his work on Municipal Corporations, § 88, n. 2: "This last decision seems to the author to be erroneous, on the ground that the act of 1870 did not, *ipso facto*, repeal the general law in the city, but such repeal, or suspension rather, was only effected when the city passed the ordinance. If so, a repeal of the ordinance by the council, without the act of 1874, would have left the general law of the State in force, and its repeal by the act of 1874 would have precisely the same effect." These remarks, which appear to us sound and conservative, are *apropos* to the question here involved. It not appearing that any ordinance licensing, taxing and regulating retailers, had been passed by the mayor and city council of Anniston, the act of December 7, 1886, prohibiting the sale of intoxicating liquors in Calhoun county, remains in force in that city.

The application for the license, not having been made until after the act took effect, was properly refused by the judge of probate.

Affirmed.